SHAWN N. ANDERSON
United States Attorney
STEPHEN F. LEON GUERRERO
Assistant U.S. Attorney
MARIE L. MILLER
Special Assistant United States Attorney
108 Hernan Cortez Avenue
Hagåtña, Guam 96910
PHONE: (671) 472-7332
FAX: (671) 472-7215

Attorneys for the United States of America

IN THE UNITED STATES DISTRICT COURT

FOR THE TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br>vs.<br><br>JOHN D. WALKER,<br>aka JON WALKER,<br>MARVIN R. REED,<br>KENNETH R. CROWE,<br>PHILLIP T. KAPP,<br>RANDALL ROGERS, and<br>HANSEN HELICOPTERS, INC.<br><br>Defendants. | CRIMINAL CASE NO. 18-00010<br><br>**UNITED STATES' EMERGENCY MOTION FOR PROTECTIVE ORDER TO PREVENT THE SPOLIATION OF EVIDENCE AND PREVENT THE HARASSMENT OF WITNESSES** |

The United States of America, by and through undersigned counsel, hereby moves the Court for an Emergency Protective Order, pursuant to the Federal Rules of Criminal Procedure 16, to prevent the Defendants from tampering with an object, helicopter N45777, critical evidence independent of and in support of witness testimony about the condition of this aircraft, which is identified in the Superseding Indictment. In addition, the Government moves for a protective order to prevent the Defendants from harassing witnesses for the purpose of attempting to influence their testimony regarding the aircraft, or prevent them from testifying, in violation of federal law and the conditions of their release.

**BACKGROUND**

On or about June 19, 2020, Jose Eduardo Marinho Goncalvez (Marinho), a Spanish national, pilot, and Defendant employee, was arrested by authorities of the Republic of the Marshall Islands (RMI) after landing the helicopter he was piloting, N45777, on Mili Atoll, for failing to have a valid visa. (Exhibit 5). Mr. Marinho flew the helicopter from a tuna boat on which he was employed, by Defendants (Exhibit 4), to tuna spot using the helicopter, when he could no longer tolerate the conditions of his employment.

Marinho told U.S. officials that that he was currently staying "in a place where HANSEN has a lot of power …(and)… a lot of money" and that he was afraid for his safety due to the information he had about the Defendants. Marinho told U.S. officials that he did not possess a FAA pilot license, nor did any of the mechanics or pilots he regularly worked with. Marinho showed U.S. officials text messages from an individual relaying a message to Marinho on behalf of Defendant Crowe. The text message reads in pertinent part,

> Ed, rufus have msg for you below.
>
> TELL THAT EDUARDO THAT IF HE DOESN'T F[redacted]KING SHUT HIS MOUTH THAT WE'RE GONNA PRESS CHARGES ON HIM STEALING OUR HELICOPTER AND SUE HIM FOR THE EXPENSES AND THE TIME DOWN!

(Exhibit 1 - WhatsApp Screen Shot).

In interviews with federal law enforcement agents and attorneys, Marinho stated that he worked for Defendants Kapp, Crowe, and Reed since about May 2019 as a helicopter pilot of U.S. registered and marked helicopters, despite the fact at no point did Marinho ever possess a FAA pilot's certificate. Marinho was hired and paid to fly three U.S. registered aircraft (N45777, N9057F, and N336SP). These aircraft are specifically referenced in the Superseding Indictment. (ECF No. 369).

During the course of his employment, Marinho repeatedly told his supervisors, Defendants Crowe, Kapp, and Reed, that he had serious concerns about the safety of the helicopters he flew, and, in particular, the tail rotor pitch change links on the aircraft. He sent the Defendants emails, pictures, and video of his concerns, to no avail.

**The Government Seeks to Protect Helicopter N45777 from Spoliation**

Based on the photographs, videos, and statements of Marinho, the Defendants may attempt to obtain helicopter N45777 from Mili, and shield it from use by the Government in the criminal prosecution. If the Defendants are successful in obtaining the aircraft, there is a significant risk that the Defendants will alter the aircraft's current condition, destroying critical evidence in this criminal case. The helicopter shows the Defendants never removed the U.S. identification and registration markings of N45777, and orchestrated sham transactions with Hansen's corporate alter egos for the sole purpose of avoiding regulation and inspection of this aircraft, a significant component of the criminal case.

After Defendants were indicted on May 30, 2018, ECF No. 1, on December 6, 2018, Defendant Crowe sought to transfer ownership of N45777 from one Vanuatu corporation (Charlie Air) to another (Limey Air) for $1.00. The FAA then notified Defendants that the registration for helicopter N45777 had expired and that the aircraft's registration and airworthiness certificates "no longer support[ed] the aircraft's operation." (Exhibit 2) Further, the FAA informed Defendants that use of the registration number was unauthorized and that the FAA would cancel the registration number's assignment to the aircraft. *From the time of the expiration of the registration and airworthiness certificate through the day Marinho landed the helicopter on Mili, it was operated in violation of federal law with no oversight from any Civil Aviation Authority in the U.S. or elsewhere.* (Exhibit 3).

//

## **Helicopter N45777 is Critical Evidence**

Helicopter N45777 is critical evidence in this criminal case for multiple reasons. First, it is a clear example of Defendants' *modus operandi* of using unsafe aircraft and avoiding oversight. Second, it is an aircraft for which FAA Inspector Timothy Cislo, who already pled guilty in this case of three felonies in connection with the Defendants' fraud, facilitated paperwork from the FAA for Defendants to fraudulently operate it. Third, the statements, photographs, and videos of the aircraft demonstrate its un-airworthy condition. (See, for example, Exhibit 6). Fourth, the helicopter shows that years after it was no longer registered with the FAA, it continued to operate as if it were so registered.

The current condition of N45777 is critical evidence of Defendants' fraud, corroboration of Marinho's anticipated testimony, and evidence of the Defendants' use of counterfeit parts. Additionally, the aircraft will show:

- The bridge or vent breather on N45777's tail rotor is broken and was put back on with wire
- The tail rotor pitch change link is old, and the Defendants have directed employees to extend the life of the tail rotor pitch change link in ways that were neither approved nor safe
- That the tail rotor pitch change link on N45777 had thread affixed to it, presumably for the purpose of extending the part's life
- That when a tail rotor pitch change link on Defendants' aircraft got old, the Defendants would direct their employees to send the part to Guam to "fix" it, rather than replace it
- That the tail rotor pitch link on N45777 does not contain a manufacturer product number, manufacture date, and is not the same material used in the manufacture of legitimate tail rotor pitch links
- That the tail rotor pitch link on N45777 has been painted over to further obscure the fact it is a counterfeit part

The best evidence of the condition of the helicopter and Defendants' fraudulent and criminal acts is the helicopter itself.

//

**ARGUMENT**

The Government respectfully requests the Court exercise its authority and control over discovery to protect the integrity of this criminal proceeding. The Government requests the Court issue a protective order under Fed. R. Crim. P. 16 ordering Defendants and their counsel to: (1) refrain from obtaining or altering helicopter N45777, and (2) immediately cease harassing government witnesses.

**1. The Court Should Issue an Order for the Protection of N45777**

The Defendants' possess "Information Subject to Disclosure" which they actively attempt to keep from the jurisdiction of the Court. Fed. R. Crim. P. 16. At any time the Court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief, including to order a party to permit discovery or inspection; and specify its time, place, and manner; and prescribe other just terms and conditions. *Id.* The Court may also enter any other order that is just under the circumstances. *Id.*

While Federal Rule of Criminal Procedure 16(b)(1)(A) does not grant the United States a broad right to discovery, Rule 16 does entitle the United States to reciprocal discovery regarding information or tangible objects that are both within the Defendants' possession, custody or control as long as the Defendants intend to use the information or tangible objects in their case-in-chief. *See* Fed. R. Crim. P. 16(b)(1)(A)(I) and (ii). The Defendants' "case-in-chief" includes any cross-examination of witnesses for the United States. *See United States v. Holden*, 2015 WL 1514569, *5 (D. Or. Mar. 19, 2015).

Here, each of the counts in the Superseding Indictment are connected to Defendants' fraudulent representations that their aircraft were airworthy and in compliance with federal aviation regulations. Relevant here, Defendants fraudulently used unapproved aircraft parts on their aircraft while also falsely representing that these parts were, in fact, in compliance with

federal regulations. *Id.* The Government anticipates that Mr. Marinho will testify to the actual physical condition of N45777 and the functionality of parts like the tail rotor pitch change link. Because the Defendants will necessarily attempt to cross-examine Mr. Marinho, the Court should order protective the Government's ability to corroborate Mr. Marinho's anticipated testimony as an employee of Defendants. (Exhibit 4).

For these reasons, the Court should issue an order of protection, ordering Defendants and their counsel to refrain from obtaining helicopter N45777, or altering the current condition of N45777 in any way.

**2. The Court Should Issue an Order Preventing the Defendants From Harassing Government Witnesses**

Federal Rule of Criminal Procedure 16 governs discovery and provides for the option of a protective order: "At any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." Fed. R. Crim. P. 16(d)(1). Courts in this circuit have found good cause for a protective order based on a "sufficient threshold showing of actual and potential threats, intimidation, and harassment to victims, witnesses, and law enforcement officers." *United States v. Bundy*, No. 2:16-CR-46-GMN-PAL, 2017 WL 521613, at *2 (D. Nev. Feb. 7, 2017).

Here, Defendant Crowe attempted to tamper with Mr. Marinho, a government witness, by texting Mr. Marinho that they would sue him if he "doesn't f[redacted]king shut his mouth." (Exhibit 1). This text is clearly a coercive attempt to tamper with Mr. Marinho's testimony. Moreover, the Defendants' contact with Mr. Marinho is particularly concerning because this Court has previously ruled that Defendant Kapp's contact with Mr. Litkei violated the condition of his pre-trial release and that the Defendants that must refrain from contacting government witnesses either directly or indirectly. (ECF No. 129). Here, the Defendants have plainly disregarded the

Court's order prohibiting such contact, and have since attempted to tamper with this important Government witness.

For the above reasons, the Government respectfully requests the Court Grant this Emergency Motion for Protective Order.

RESPECTFULLY submitted this 5th day of August, 2020.

SHAWN N. ANDERSON
United States Attorney
Districts of Guam and the NMI

By: *<u>/s/ Stephen F. Leon Guerrero</u>*
STEPHEN F. LEON GUERRERO
Assistant U.S. Attorney

*<u>/s/ Marie L. Miller</u>*
MARIE L. MILLER
Special Assistant U.S. Attorney