# THE DISTRICT COURT OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JOHN D. WALKER aka JON WALKER, and HANSEN HELICOPTERS, INC.,<br><br>Defendants. | CRIMINAL CASE NO. 18-00010-001<br>CRIMINAL CASE NO. 18-00010-006<br><br>**ORDER DENYING JOINT MOTION FOR MISTRIAL** |

Defendants John D. Walker and Hansen Helicopters, Inc. filed a Joint Motion for Mistrial Due to the Government's Contamination of the Jury Through Improper Submission of Unadmitted Jury Exhibits to Jury During Closing Arguments and Deliberations (ECF No. 1755), asking this court to declare a mistrial in the above-captioned case. The United States opposed the motion. *See* Opp'n, ECF No. 1758. The court heard the matter on September 6-7, 2022, and deferred ruling on the motion until after the return of the Jury's Verdict.[1] For the reasons stated

[1] After the verdict was returned, Defendants jointly requested for permission to file a Supplement to their Joint Motion for Mistrial. *See* Mot., ECF No. 1832. That request was granted, and Defendants were given no later than 30 days after the completion of the trial transcript to file a Supplement to their Joint Motion for Mistrial. *See* Order, ECF No. 1835. The Notice of Filing of Official Transcript was filed on December 20, 2023. *See* Notice, ECF No. 2160. Defendants filed separate Joint Motions for Judgment of Acquittal, New Trial, and Arrest of Judgment. *See* Mots., ECF Nos. 2131 and 2132. Thereafter, the parties jointly filed a status report, ECF No. 2164, informing the court that a potential global settlement is being negotiated and asked the court to defer any rulings. On February 24,

herein, the motion is **DENIED**.

Mistrial is analyzed under the "manifest necessity" test. *Arizona v. Washington*, 434 U.S. 497, 505 (1978). Under this test, retrial is permitted only if a "manifest necessity" justifies the mistrial. *Id.* The meaning of "manifest necessity" is open-ended, as "courts steadfastly continue to refuse to categorize fact patterns that constitute manifest necessity and fact patterns that do not. There are degrees of necessity, and only a high degree can justify a mistrial." *United States v. Bates*, 917 F.2d 388, 394 (9th Cir. 1990) (internal quotation omitted).

"A defendant is entitled to a new trial when the jury obtains or uses evidence that has not been introduced during trial if there is a reasonable possibility that the extrinsic material *could* have affected the verdict." *United States v. Prime*, 431 F.3d 1147, 1157 (9th Cir. 2005) (quoting *Dickson v. Sullivan*, 849 F.2d 403, 405 (9th Cir. 1988) (internal quotation omitted). "The prosecution bears the burden of proving beyond a reasonable doubt that extrinsic evidence did not contribute to the verdict." *Id.*

The Ninth Circuit has set forth several factors for the court to consider in determining whether the prosecution has met this burden. These factors are:

1. Whether the material was actually received, and if so, how;
2. The length of time it was available to the jury;
3. The extent to which the jury discussed and considered it;
4. Whether the material was introduced before a verdict was reached, and if so at what point in the deliberations;
5. Any other matters which may bear on the issue of the reasonable possibility of whether the

2024, the parties filed another joint status report, ECF No. 2171, informing the court that while the parties continue to meet and confer, that a hearing on the Joint Motions for Judgment of Acquittal, New Trial, and Arrest of Judgment, ECF Nos. 2131 and 2132, should be set. In light of this request, the court now moves forward in issuing its decision on the instant Joint Motion for Mistrial, which has been on hold at the request of the parties. It will hear the other motions separately.

extrinsic material affected the verdict, including the nature of the extrinsic evidence;

6. Whether the extraneous information was otherwise admissible or merely cumulative of other evidence adduced at trial;

7. Whether a curative instruction was given or some other step taken to ameliorate the prejudice;

8. The trial context;

9. Whether the statement was insufficiently prejudicial given the issues and evidence in the case.

*Id.* (citing *Dickson*, 849 F.2d at 406; *United States v. Keating*, 147 F.3d 895, 902-03 (9th Cir. 1998); *Jeffries v. Wood*, 114 F.3d 1484, 1491-92 (9th Cir. 1997)).

The extraneous information shared with the jury consisted of the following:[2]

1. The names of employees of Defendant Hansen Helicopters that appeared as transferees in the bank records of Caledonian Agency, Inc. These names do not constitute personal data identifiers that *must* be redacted from trial exhibits per General Local Rule 5.2(a). Rather, the parties agreed to the redaction of these names as a courtesy to the named individuals.[3] There were four exhibits that these names appeared in: Exhibits G-0021 (pp.1-11), G-0022 (pp.1 and 21), G-0025[4] (pp.1, 11, and 12), and G-2936 (pp.1).

2. The name of the law firm that represented Defendant Hansen Helicopters that appeared as

[2] Defendants' motion focused on only four exhibits: G-0694, G-1085, G-1248, and G-1254. *See* Mot., ECF No. 1755. However, at the motion hearing held on September 6, 2022, the court had defense counsel go through each exhibit that they found to be at issue and discuss how the extraneous information from said exhibit prejudiced them. Thus, the list of extraneous information discussed herein is based on what defense counsel presented at the September 6, 2022 hearing.

Majority of the exhibits at issue were electronic exhibits that went into the jury room.

[3] Defendant Hansen Helicopters only requested redactions from Exhibit G-0025 (Aug. 15, 2022). The court admitted Exhibit G-0025 on the condition that it would be subsequently redacted. No such conditions were imposed in the other bank records (Aug. 15, 2022).

[4] This exhibit included pages 22 and 23, but there were no issues on these two pages.

a transferee in the bank record of Caledonian Agency, Inc.[5] The law firm's name appeared in Exhibit G-2898-2. At the time said exhibit was admitted on May 11, 2022, no request for redaction was made. The exhibit was then published to the jury on May 31, 2022, with the law firm's name appearing on the bank record. It was then that an objection was made and the request for redaction was granted.

3. The routing and bank account numbers that appeared on a check issued by Hansen Helicopters to the Federal Aviation Administration ("FAA"). The exhibit where this information appeared was on Exhibit G-1630 (pp.8). Personal data identifiers, including financial account numbers, should have been redacted per General Local Rule 5.2.
4. Yellow highlighted portions of an email dated July 22, 2014, from Rufus Crowe to Jon Walker, with the subject line, "pretty pussy". The portions of the email that were highlighted were on the requirements of obtaining an aircraft operator certificate (e.g., "if an applicant applies for an agricultural aircraft operator certificate containing a prohibition against the dispensing of economic poisons, that applicant is not required to demonstrate knowledge required in [certain] section[;]" "The applicant must have at least one certificated and airworthy aircraft, equipped for agricultural operation."). The exhibit where the highlights appeared was on Exhibit G-0860 (pp.1 and 2).
5. "For Official Use Only" watermarks and a notation on each page that states that the document is "privileged and confidential" and that the document is related to a federal investigation appeared on a Hansen Helicopters Board of Directors document dated January 28, 2015. The exhibit where these markings appeared was on Exhibit G-2899 (pp.1 and 2). Evidence at trial showed that there was a federal investigation by the "Federal Law Enforcement" and that such information is "confidential", *see e.g.*, Exhibit

[5] At the time of trial, the McConwell Law Office represented Hansen Helicopters.

G-1431-52.

6. Grand jury exhibit number stickers appeared on photos of an aircraft or parts of an aircraft. These photos were published to the jury on May 12, 2022, without the grand jury stickers on them. The exhibit where grand jury stickers appeared was on Exhibit G-0455 (pp.40, 41, 42, 46, 65, 66, and 68).

7. Several communications between staff of the Civil Aviation Authority of New Zealand (NZ CAA) regarding deregistration of ZK-HMF and ZK-HIA due to them being not airworthy, as well as a reference to a video of ZK-HMF showing it taking off while still strapped onto a deck of a boat by one line; communications between NZ CAA and FAA re the same; communication from NZ CAA and Philippines CAA re the same; communication from NZ CAA and Chinese Taipei CAA re the same; communications from NZ CAA to Mr. Walker informing him of his response deadline to the proposed revocation of certificate of registration of ZK-HMF and ZK-HIA; a coversheet regarding the revocation of certificates of registration of ZK-HIA and ZK-HMF; and Index of documents held by NZ CAA. The exhibit where this information appeared was on Exhibit G-1431 (pp. 6-7, 42, 49, 50-51, 55-56, 67-77).[6] Exhibit G-1431 contained 77 pages of documents and only certain pages were admitted. The same information contained in the not-admitted-evidence can be found in the admitted evidence. For example, Exhibit G-1431-52 was admitted, which was a communication from FAA to NZ CAA that discusses unreported accidents, airworthiness of the aircraft, and a description of a video that showed "ZK-HMF trying to take-off with one hold down line still attached" and the helicopter rolling over. This is identical to the same email in Exhibit G-

[6] The court focused on these pages as these were what were raised by Defendants at the motion hearing wherein they argued were prejudicial. However, the court notes that there were other pages of extraneous information. Only the following pages were admitted from Exhibit G-1431: 1-5, 23-26, 32, 34, 36, 37, 40, 41, 43-48, 52, and 63-65.

1431-56, which was not admitted. Similarly, in Exhibit G-1431-43, which was admitted, it discusses the helicopters not having had an annual inspection for several years, and a reference to the helicopter take-off accident which was unreported. There was also admitted evidence of a communication from NZ CAA to Mr. Walker, informing him of the Notice of Final Decision to deregister ZK-HMF and ZK-HIA. *See* Ex. G-1431-65.

8. The names of two mechanics that were not on the indictment appeared on a Summary Chart. The exhibit where these two names appeared was on Exhibit G-1248. Evidence at trial was *not* limited to names that were on the indictment. For example, Mr. Thomas Geluz Bustos (May 21, 2022) testified that he was an uncertificated pilot. His name was not listed on the indictment.

9. The electronic copy of Exhibit G-1254 was mislabeled. What was labeled as Exhibit G-1254 is a chart similar to Exhibit G-1248,[7] containing the following columns and information: Helicopter, Mechanic, FAA Certificated, Country, and Dates. The correct Exhibit G-1254 contained substantially more information than the mislabeled Exhibit G-1254. The correct Exhibit G-1254 contains the following columns and information: Helicopter, Mechanic, Count, Indictment, PMList Files from Search Warrant - Reported Contract Dates and File Saved Dates, Subpoenaed HH Records - Reported Assignment Date, and Government Exhibit Number.

10. The electronic copy of Exhibit G-3036 was mislabeled.[8] What was in the electronic version was a Philippine aircraft certificate of registration. However, the actual Exhibit G-3036 was a copy of a final notice of expiration of aircraft registration from the FAA.

[7] Defendants made similar arguments in Exhibit G-1254 regarding the inclusion of names not listed on the indictment.

[8] Exhibit G-3036 was mentioned at the motion hearing in the context of the JEEPS Index/Exhibit List description, but neither Defendants nor the Government discussed the exhibit itself as a problem. However, the court includes this exhibit on the list of extraneous information because it was listed on Exhibit 10 to Defendants' Corrected Reply, ECF No. 1764, and Defendants' supplemental filing, ECF No. 1775.

11. An Aircraft Bill of Sale was not admitted into evidence but was included in the electronic version that went into the jury room. This exhibit was Exhibit G-2999. The information contained therein (the United States registration number, aircraft serial number, date of the sale, name and address of the purchaser, and seller's name) is the same information contained in a Bill of Sale History Summary Chart, which was admitted into evidence, Exhibit G-1245 (*see* pp.2).

12. The electronic copy of the Registration and Suspense Registration File Review Summary Chart that went into the jury room was the wrong version. The correct version that should have gone into the jury room was the chart dated March 10, 2022, not the chart dated November 2, 2021. The correct version of the chart should have had the following information: (i) a column of "Name of Applicant"; (ii) the words, "signed by or method by which filed", instead of "certified/signed by" in one of the columns; (iii) the words, "certified and signed by on behalf of applicant" instead of "last signed by as registered owner" in one of the columns; (iv) a column of "Suspense File Date SEIT Flagged"; and (v) the words, "timeframe of ownership" instead of "timeframe of Hansen et al ownership" in the last column. Evidence at trial shows that the signatory, Defendant Walker, is either the president or the owner of the aircrafts at issue, e.g., Exhibits G-2982 and G-0120-7. This exhibit where the incorrect version appeared was on Exhibit G-1252.

The following exhibits, the Bill of Sale History Summary Chart (Ex. G-1245) and the Aircraft Bill of Sale (Ex. G-2992), are not at issue. Defendants admit there is no substantial difference between what went into the jury room and what was supposed to go into the jury room. Defendants concede that the differences are de minimus.

Although the following exhibits were not argued by Defendants at the motion hearing, they

were noted in Exhibit 10 to Defendants' Corrected Reply, ECF No. 1764, and briefly discussed by the Government at the hearing: (i) Exhibits G-0139, G-0366, and G-2900 had duplicate electronic copies; (ii) the electronic copy of Exhibit G-1244A was an old version; and (iii) Exhibit G-0358 was omitted from the final JEEPS Exhibit List, even though the parties agreed that it should be on the list.

The extraneous information listed above[9] went into the jury room, and the jurors had them for approximately six hours and 16 minutes.[10] The discrepancy in evidence between the hard copy and electronic version was discovered when the court received a jury note requesting for clarification. *See* Jury Note, ECF No. 1753. At that time, on September 1, 2022, the jury recessed and did not reconvene for deliberation until September 8, 2022, when the court gave curative instructions. The court held an extensive hearing on the discrepancies, from September 6-7, 2022. *See* Min. Entries, ECF Nos. 1770 and 1773.

On September 8, 2022, the court instructed the jury to disregard the discrepancies they previously saw in the exhibits and to focus their attention on what was being given to them now. The court also instructed the jury to disregard the index of exhibits previously provided to them and to use the index being given to them now. The court explained that in addition to checking the discrepancies stated in the jury note[11] dated September 1, 2022, the court and the parties went through the rest of the over-400 exhibits to ensure their accuracy.

Other than the two exhibits that were flagged for discrepancy by the jury, the jury did not flag any other discrepancies. In addition, the court has no information whether the jury actually

---

[9] Items 1 through 12, the de minimus exhibits, and the exhibits listed on Defendants' Corrected Reply and raised by the Government at the hearing.

[10] Deliberation started anew with the alternate juror on September 1, 2022. *See* Min. Entry, ECF No. 1751. It was established at the motion hearing that the length of time the information was available to the jury was 7 hours and 1 minute, minus 45 minutes for a lunch break.

[11] Exhibits G-1248 and G-1254 (hard copy versus electronic version).

considered or discussed any of the extraneous information.

After the motion hearing, the court conducted its own thorough review of the discrepancies of the exhibits discussed at the hearing. The court finds that the information was either cumulative, admissible, or simply non-prejudicial or insufficiently prejudicial to Defendants.

The inclusion of names in Exhibits G-0021 (pp.1-11), G-0022 (pp.1 and 21), G-0025 (pp.1, 11, and 12), and G-2936 (pp.1) is non-prejudicial to Defendants. As noted above, the names do not constitute personal data identifiers that must be redacted and were admissible evidence. The redaction was done as a courtesy to the named individuals.

Similarly, the inclusion of the law firm's name in Exhibit G-2898-2 is insufficiently prejudicial, if at all prejudicial, to Defendants. This evidence was published to the jury, so the jury saw what was on the bank record. The request for redaction was made soon after it was published.

The inclusion of the routing and bank account numbers in Exhibit G-1630 (pp.8) is also insufficiently prejudicial, if at all prejudicial, to Defendants. While the information constitutes personal data identifiers, the court does not see how the disclosure of bank account and routing numbers prejudiced Defendants.

The inclusion of yellow highlights in Exhibit G-0860 (pp.1 and 2) is again insufficiently prejudicial, if at all prejudicial, to Defendants. Assuming the jury may have focused their attention to the highlighted portions, the highlights were merely on the requirements of getting an aircraft operator certificate.

The inclusion of watermarks and federal law enforcement notation in Exhibit G-2899 (pp.1 and 2) is cumulative. The jury was aware that there was a federal investigation against Defendants and that such investigation was confidential. *See e.g.*, Ex. G-1431-52.

The inclusion of the "Grand Jury Exhibit No." stickers in Exhibit G-0455 (pp.40, 41, 42,

46, 65, 66, and 68) is insufficiently prejudicial, if at all prejudicial, to Defendants. The court does not find that there is a reasonable possibility of a sticker that merely has a grand jury exhibit number on it affecting the verdict.

The inclusion of several unadmitted NZ CAA documents in Exhibit G-1431 is cumulative. Admitted evidence shows the same information: the lack of annual inspection of the aircrafts, concerns of unreported accidents, description of a video that showed an aircraft accident, and the deregistration of the two aircrafts. *See e.g.*, Ex. G-1431 (pp.43, 52, and 65).

The inclusion of the names of two mechanics in Exhibit G-1248, who were not named in the indictment, is insufficiently prejudicial, if at all prejudicial, to Defendants. Testimony at trial included at least one individual who said he was an uncertificated pilot (*see* Bustos Testimony, May 21, 2022). This individual was not named in the indictment, just like the two mechanics at issue. *See United States v. Loftis*, 843 F.3d 1173, 1176 (9th Cir. 2016) (Evidence of uncharged transactions is not evidence of "other" crimes but rather, it is evidence of the overall scheme to defraud.).

Similarly, the inclusion of a mislabeled chart in the electronic version of Exhibit G-1254 is insufficiently prejudicial, if at all prejudicial, to Defendants. The same analysis as above (Exhibit G-1248) applies. In addition, the court agrees with the Government that the correct Exhibit G-1254 actually contains substantially more information than the mislabeled chart.

The inclusion of a mislabeled document in the electronic version of Exhibit G-3036 is insufficiently prejudicial, if at all prejudicial, to Defendants. The electronic version provided was a Philippine aircraft certificate of registration, when it was supposed to be an FAA final notice of expiration of an aircraft registration.

The inclusion of an aircraft bill of sale in Exhibit G-2999 is cumulative. The same information was contained in Exhibit G-1245 (pp.2).

The inclusion of the wrong version of a summary chart on registration/suspense registration in Exhibit G-1252 is insufficiently prejudicial, if at all prejudicial, to Defendants. The court agrees with the Government's argument that this is form over substance.

Defendants also take issue with the description used by the Government in the JEEPS Index/Exhibit List. For example, Defendants take issue with the description of Exhibit G-0001 as "Email re: $400K, Caledonian Insurance, Pilots" and instead proposed to replace it with, "Email re March 28, 2013, Rusfus [*sic*] Crowe / John Walker." Ex. 12 to Defs.' Reply, ECF No. 1764. The email itself contains the subject line of "$400K Please……" and discusses the wiring of said amount, pilots, and Caledonian Insurance. The court does not find the descriptions contained in the JEEPS Index/Exhibit List prejudicial. Further, the Government agreed to all of Defendants' proposed descriptions as contained in Exhibit 12 to Defendants' Corrected Reply, ECF No. 1764, and this was then provided to the jury at the time the curative instructions were given.

The court finds that there is no reasonable possibility that the jury's exposure to these unadmitted exhibits and/or extraneous information affected the verdict. As discussed above, they were either cumulative, admissible, or simply non-prejudicial or insufficiently prejudicial to Defendants. The exposure to the jury was limited, just a little over six hours.[12] Further, the court gave curative instructions to the jury to disregard any discrepancies they saw. The jury's self-policing—alerting the court to the discrepancies they found—demonstrates that the jury adhered to the court's instructions then and there is no reason for the court to believe now that they did not adhere to the curative instructions given to them on September 8, 2022. Lastly, there were over 400 exhibits and the inclusion of unadmitted exhibits and/or extraneous information was

[12] When the jury returned for deliberation after being given the curative instructions and the corrected exhibits, the jury deliberated for an additional 11 hours.

attributable to not just one party but to all involved.[13] The court does not find any bad faith here. *See United States v. Walton*, No. 18-50262, 2021 WL 3615426, at *3 (9th Cir. Aug. 16, 2021).

For the reasons stated herein, the court finds that there is not a "manifest necessity" for a new trial in this case. The motion is therefore **DENIED**.

**SO ORDERED.**

**/s/ Frances M. Tydingco-Gatewood**
**Chief Judge**
**Dated: Mar 15, 2024**

[13] Prior to jury deliberation, the court ordered the parties to meet and confer and to go over the exhibits with the courtroom deputy clerk to ensure its accuracy. Defendants' exhibits also contained extraneous information. *See* Ex. 10 to Defs.' Reply, ECF No. 1764.