Steven R. Welk
Dentons US LLP
4675 MacArthur Court, Suite 1250
Newport Beach CA 92660
Telephone 949-732-3724/213-999-2501
Steven.Welk@Dentons.com
*Admitted Pro Hac Vice*

Vanessa L. Williams, Esq.
Law Office of Vanessa L. Williams, P.C.
414 West Soledad Avenue
GCIC Bldg., Suite 500
Hagåtña, Guam 96910
Telephone: 671-922-5689/671-777-5689
Email: service@vlwilliamslaw.com

*Attorneys for Defendant John D. Walker*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JOHN D. WALKER,<br>aka JON WALKER, and<br>HANSEN HELICOPTERS, INC., ET AL.,<br><br>Defendants. | CRIMINAL CASE NO. 18-00010<br><br>**DEFENDANT JOHN D. WALKER'S RESPONSE TO GOVERNMENT'S OBJECTIONS TO DRAFT PRESENTENCE INVESTIGATION REPORT (ECF NO. 2244)** |

Defendant John Walker, by and through undersigned counsel submits the following response to the government's Objections to the Draft Presentence Investigation Report ("PSR"). These objections focus on the legal conclusions asserted in the draft PSR concerning the calculations under the United States Sentencing Guidelines and restitution as well as the government's failure to meet its burden of proving by at least a preponderance of the evidence that the PSR's Guidelines' calculations are incorrect.

### I. The PSR correctly does not apply a role adjustment for counts 10 and 99.

The government argues that Mr. Walker should be given a +4 role enhancement as the organizer and leader of the aircraft parts fraud charged in count 10 and the wire fraud conspiracy charged in count 99 based on his position as owner of the companies involved in those counts. As discussed more below, this question is largely irrelevant because the PSR correctly determined that those counts do not ultimately control the guidelines calculations. In any event, Mr. Walker's position as owner of the companies who perpetrated the crimes is not sufficient to warrant application of an aggravating role enhancement as to those specific counts because "titles such as 'kingpin' and 'boss' are not controlling" U.S.S.G. § 3B1.1 App. n. 4. Instead, the Guidelines require the government to prove the defendant actually acted as an organizer or leader as to those particular counts, *see United States v. Armstrong*, No. 20-50192, 2021 WL 4891991, at *2 (9th Cir. Oct. 20, 2021), and had authoritative control of others' criminal conduct, rather than relying on his nominal position in the organization. *See United States v. Harris*, 999 F.3d 1233, 1335-36 (9th Cir. 2021); *United States v. Holden*, 908 F.3d 395, 402 (9th Cir. 2018) ("Nor is it sufficient for a defendant to have organized property or activities – the defendant must have organized *participants*.").

The conduct cited by the government as evidence of Mr. Walker's leadership does not relate to either Count 10 or Count 99, nor does it show organization or leadership. The government states Mr. Walker employed hundreds of airmen, yet neither Count 10 nor 99 relates to the employment of airmen, and the admitted evidence at trial showed the airmen (mechanics and pilots) were hired and supervised by Messrs. Crowe, Kapp, and Reed, not Mr. Walker. *See, e.g.,* ECF 2052 at 38 (pilot Marinho only dealt with Crowe, Reed or Kapp), ECF 2042 at 37, 39-40 (pilot Braga only dealt with Crowe, Kapp, and Reed); ECF 2025 at 46-47 (pilot Bustos testified Reed allowed him to choose his mechanic), ECF 2029 at 204-05 (pilot Bustos had contact with

Reed regarding contracts, boats, and periodic reports), and 330 (majority of pilot Bustos's contact was with Crowe). In fact, those witnesses testified they had little or no interaction with Mr. Walker at all. *See, e.g.,* ECF 2052 at 124 (Marinho never met with or spoke to Mr. Walker); ECF 2025 at 29-30; ECF 2029 at 330-331 (single interaction Bustos had with Mr. Walker was when Mr. Walker repaired a helicopter on a tuna boat in 2008). Similarly, the government claims Mr. Walker forged a signature on a helicopter registration, but such conduct neither demonstrates organization nor leadership, nor does it relate to the conduct charged in Counts 10 and 99. The government's other citations likewise do not support a role enhancement. *See* Ex. G-6 (interview of Jeffrey Sarimos stating he had "no interaction" with Mr. Walker as noted in PSR ¶ 106; Ex. G-8 (interview with Oswald Espion noting Mr. Walker as owner of PSC but not describing any organizing or leading of criminal activity); Ex. 829 (chart showing Mr. Walker as owning the most shares of subject companies but reflecting no leadership or organizational responsibilities).

Finally, the government has not identified the five individual (not corporate) conspirators as to those two specific counts that would trigger a 4-level increase. *See United States v. King*, 257 F.3d 1013, 1024 (9th Cir. 2001). For all of these reasons, the government has not proved the aggravating-role enhancement applies.

**II. The PSR correctly does not apply an obstruction adjustment for any count.**

The obstruction enhancement under U.S.S.G. § 3C1.1 applies only where Mr. Walker personally engaged in obstructive conduct or aided and abetted another person to do so. U.S.S.G. § 3C1.1 App. N. 9. In this case, no obstruction charges were filed, obstruction was not an object of the charged conspiracy, and the government has not proved Mr. Walker knew about the purported obstructive conduct or had anything to do with it, let alone counseled, commanded, or procured it.

The government cites U.S.S.G. § 3C1.1 App. N. 4(A) (threatening a witness), (C) (producing false document during an official investigation or judicial proceeding), and (D) (destroying or concealing evidence material to an official proceeding or investigation). However, none of the materials the government cites supports this enhancement.

With respect to the purported visit by defense counsel to Mr. Cislo, the Court found that a magistrate looked at the government's claim and concluded "the encounter was inconsequential" and "defendant's account [was] more believable." ECF 2039 at 322-23. As to the claim Marinho was threatened to keep his mouth shut, Marinho actually testified that he "never received a direct threat" (ECF 2052 at 112), and any message he did receive came from Rufus Crowe, not Mr. Walker (*Id*).

With respect to the allegation that Mr. Walker destroyed evidence and provided false documents to the government, the enhancement applies where the conduct occurred "upon learning that an official investigation has commenced or is about to commence" and only applies to conduct occurring before an investigation commences if it "was purposefully calculated, and likely, to thwart the investigation or prosecution of the offense." U.S.S.G. § 3C1.1 App. N. 1, 4(D). Here, the government cites summary charts of bank accounts and purchases and sales of helicopters (G-1243-46 & G-1249-52). The government provides no explanation for how these accounts and purchase records constituted an attempt by Mr. Walker to impede its investigation. The government's support for its allegation that Mr. Walker destroyed evidence by sinking helicopters to thwart an NTSB investigation is similarly lacking. The only cited evidence that even mentions a sunken helicopter is the reference to Mr. Guzzetti's testimony (ECF 1892 at 246-47) that a helicopter was returned to the water and allowed to sink after a crash. However, Mr. Guzzetti did not testify that Mr. Walker knew about this act or commanded, aided and abetted, or procured it. The remaining materials the government cites relate to various business documents

and aircraft registrations that do not appear to have anything to do with the destruction of evidence. The government has not proved the obstruction enhancement applies.

**III. The PSR correctly calculates the guidelines for count 99.**

**a. The base offense level should not be increased for loss amount.**

The PSR correctly determined that no loss should be applied to the base offense level for count 99. Because the government has not proved that the tuna boat operators who entered into contracts with Mr. Walker's companies did not receive the full value of the services contracted for, it has not proved any loss for purposes of U.S.S.G. § 2B1.1. *See United States v. Avenatti*, 2024 WL 4553810 (9th Cir. 2024) (reversing sentence for failing to deduct fair market value of services rendered by defendant to victims of fraud and finding to do otherwise would enhance the defendant's sentence "based on pecuniary harm that did not occur, and did not result from [the] offense" which is "contrary to the purpose of the loss enhancement, which is to ensure that a defendant's sentence is proportional to the harm he caused") (brackets omitted).

The government objects that the PSR does not apply a 28-point increase in the offense level for a loss of over $250 million it claims tuna boat operators incurred due to the contracts they entered into with Mr. Walker's companies. The government's loss calculation is based on an estimate of all the money Mr. Walker's companies could have received from tuna boat leases for an over-20 year period. That proposed loss calculation is seriously flawed in many respects, including that it is based on a baseless extrapolation founded on the speculative assumption that Mr. Walker's companies leased the same number of helicopters at the same rate and received the same amount of tuna boat income every year for 22 years. ECF 2044 at 234-36.

Most importantly, it is undisputed the tuna boat operators received helicopters, pilots, and mechanics for each of the leases and those helicopters were used for tuna spotting as the contracts provided. Because the tuna boats were provided the services for which they contracted –

helicopters and personnel for fish spotting – any purported loss must be reduced by the value of the services the tuna boats actually received. *United States v. Rutgard*, 116 F.3d 1270, 1294 (9th Cir. 1997) ("We have held that where misrepresented grapes were delivered the fraudulent broker must still be given credit for the value of the grapes he did deliver.") The government has cited no evidence as to this question, and it certainly has not proved the tuna boats received no value at all for the services they were provided. Indeed, the fact that the operators continued to sign new contracts with Mr. Walker's companies for two decades indicates they *were* satisfied with the services. It is also notable that no tuna boat company appears to have submitted a victim impact statement claiming loss, nor did any tuna boat operator testify at trial.

Finally, the PSR correctly determines that the appropriate sentencing range in this case is 78-97 months, or 6.5-8 years, and there is no basis for a sentence outside that range. To dramatically increase the sentence to life in prison based on the government's speculative loss calculation is unwarranted under the circumstances and would raise doubts about the constitutionality of the sentence. *See Jones v. United States*, 135 S. Ct. 8 (2014) (dissent from the denial of certiorari explaining that applying an extraordinary increase under the Sentencing Guidelines based on judicial fact-finding violates a defendant's rights under the Fifth and Sixth Amendments); *see also United States v. Haymond*, 139 S. Ct. 2369 (2019); *Alleyne v. United States*, 570 U.S. 99 (2013); *Apprendi v. New Jersey*, 530 U.S. 466 (2000). The government has not met its burden of proving that a 28-level loss increase applies.

**b. The government misapplies sophisticated means.**

The government's calculations seek both a 5-level increase to level 12 for sophisticated means and then a 28-level increase for amount of loss. While the government is wrong about the loss, as discussed above, the guidelines do not permit both of the requested increases.

c. **The money laundering guidelines do not apply to count 99.**

The government inexplicably adds one point to its wire fraud guidelines' calculation under U.S.S.G. § 2S1.1(b)(2)(A) for a money laundering conviction under 18 U.S.C. § 1957. Gov't Objs. At 11. However, Count 99 charged wire fraud under 18 U.S.C. §§ 1343 and 1349, not money laundering under 18 U.S.C. § 1957. Section 2S1.1 does not apply to wire fraud.

## IV. The PSR correctly does not apply a victim enhancement for counts 10 and 99.

For purposes of the enhancement for 10 or more victims found in U.S.S.G. § 2B1.1(b)(2)(A)(i), a "victim" is either a person who sustained "actual loss" as that term is defined in U.S.S.G. § 2B1.1(b)(1) or a person who sustained bodily injury as a result of the offense. U.S.S.G. § 2B1.1 App. N. 1. Count 10 concerned an accident involving helicopter N9068F that caused bodily injury to one victim. *See* ECF 2218 at 9-11 (discussing evidence supporting count 10). As discussed above, the PSR correctly concluded that count 99 did not involve "actual loss" to any victims. Therefore, the government has not proved the victim enhancement applies to either count.

## V. The PSR correctly concludes there is no basis for upward departures or an upward variance from the guidelines.

The government argues for an upward departure or variance based on factors that have already been considered in the guidelines calculations, such as that the offense resulted in death or serious bodily injury (U.S.S.G. § 2B1.1(b)(16)(A)), involved the use of sophisticated means (U.S.S.G. § 2B1.1(b)(10)(C)), or the defendant put the government to its burden of proof at trial (U.S.S.G. § 3C1.1 App. N. 2). The factors the government cites do not provide a basis for varying from the PSR's properly calculated guidelines' range. Some of the factors cited by the government fly in the face of well-established law, like the length of the trial, post-arrest silence, *see Mitchell v. United States*, 526 U.S. 314 (1999); *United States v. Rivera*, 201 F.3d 99, 101-02 (2d Cir. 1999);

and foreign conduct, *see United States v. Chao Fan Xu*, 706 F.3d 965, 992 (9th Cir. 2013), *abrogated on other grounds by RJR Nabsico, Inc. v. European Community*, 136 S. Ct. 2090 (2016); *United States v. Chunza-Plazas*, 45 F.3d 51, 57-58 (2d Cir. 1995), and otherwise violate the Fifth and Sixth Amendments.

**VI. The PSR correctly groups all charges of conviction as one group.**

The government has consistently maintained the entire course of conduct it charged and proved at trial was related to the conspiracy it charged in count 1 of the Second Superseding Indictment. Indeed, the violations it alleged in the remaining counts were listed as overt acts in furtherance of count 1, all of which was alleged to have taken place in the service of fulfilling the tuna boat leases that are the subject of counts 99-104 and the source of the money laundering charged in counts 100-105. For the government to argue now that the indictment relates to three separate courses of conduct is disingenuous at best.

RESPECTFULLY SUBMITTED:

Dated: February 13, 2025

STEVEN R. WELK
Dentons US LLP
Admitted *Pro Hac Vice*

Dated: February 13, 2025

/s/ Vanessa L. Williams
VANESSA L. WILLIAMS
Law Office of Vanessa L. Williams, P.C.

*Attorneys for Defendant John D. Walker*